[No. 2097.]

## *Ex Parte* JAMES P. LYNN.

1. CONSTITUTIONALITY OF THE " LOCAL OPTION LAW."— The act of the Legislature of this State known as the " Local Option Law " is a constitutional law, such as the Legislature had full power to enact under section 20 of article XVI of the State Constitution. See the opinion *in extenso* for a discussion of the question, and a review of the authorities thereon.
2. " LOCAL OPTION LAW "— ELECTION — PETITION.— While the article of the Revised Statutes (3227) which provides for an election under the provisions of the local option law requires that, as a basis for the order of the commissioner's court, calling such election, there shall be filed a petition signed by fifty qualified voters of the county in which the election is designed to be held, it does not prescribe any of the requisites of such petition. Inasmuch as no particular allegations or statements are required, a petition is sufficient if it expresses in an intelligible manner the desire of the petitioners that an election under the provisions of the " Local Option Law " be held within the limits therein defined.

3. Same — Term Defined — Case Stated.— It is objected to the petition in this case that it fails to state that the petitioners are qualified voters of Milam county. The petition is addressed to the commissioners' court of Milam county, Texas, and states that, "the undersigned, citizens of said county," etc. "Citizen," as defined by Webster, is "a person, native or naturalized, who has the privilege of voting for public officers, and who is qualified to fill offices in the gift of the people." *Held* that, while the right to vote and the right to hold office are not always necessary constituents of citizenship, still the commonly accepted meaning of the word "citizen" conveys the idea of a qualified voter; and, therefore, the petition in this respect is sufficient.

4. "Local Option Law."— While the "Local Option Law," which was enacted under a mandatory provision of the State Constitution (section 20, article XVI), may be said to be, in one sense, a general law, still in its operation it is confined to localities which may adopt it, and in this sense it is, and must be given the effect of, a special statute, and be held to set aside, and, during its operation, to repeal all laws and regulations in conflict with it. But even if viewed as a general law, it was unquestionably the legislative intent that it should have the effect, whenever adopted in a particular locality, to prohibit the sale of intoxicating liquors in that locality, by any person, without regard to whether such person had been previously licensed by the State, county, city or town, to sell. An unexpired license issued before the adoption of the "Local Option Law," is not, therefore, a defense to a prosecution for a violation of the local option law.

*Habeas Corpus* on appeal from an order issued in chambers, on the 31st day of October, 1885, by the Hon. Pinckney S. Ford, county judge of Milam county, Texas, refusing to release the applicant, and remanding him to custody under a complaint charging him with the sale of intoxicating liquors, in violation of the "Local Option Law."

The opinion sufficiently discloses the case.

*E. L. Antony* filed an able brief and argument for the applicant.

*J. H. Burts*, Assistant Attorney-General, for the State.

Willson, Judge. This appeal is from a judgment of the county judge of Milam county in a *habeas corpus* proceeding. Appellant was held in custody by one Cone, a constable of Milam county, by virtue of a warrant of arrest issued by a justice of the peace of said county upon a complaint charging appellant with a violation of the local option law in said county. He applied to the county judge of said county for the writ of *habeas corpus*, and obtained the same, but upon a hearing thereof said judge remanded him to the custody of said constable.

Appellant claims that he is entitled to be discharged from custody upon three grounds, to wit:

1. Because the local option law is unconstitutional.

2. Because the election at which the local option law was adopted in Milam county was void.

3. Because said law, if legally adopted, could not operate and have effect in the city of Rockdale, the place where intoxicating liquors were sold by appellant.

These propositions have been earnestly and ably insisted upon before this court by counsel for appellant, both in his brief and in an oral argument. We will consider them in the order in which we have stated them above.

I. It is claimed that the local option law is unconstitutional, because it is in violation of sections 15, 16, 17 and 19 of our Bill of Rights, and of article V and section 1 of article XIV of the amendments to the Constitution of the United States. The principal argument urged in support of this position is, that the effect of the local option law is to take or damage private property for public use, without compensation to the owner, and without due course of law. There is strong reasoning in support of the position, and, were it an original question, this court would be inclined to hold that the local option law is an infringement of section I of our Bill of Rights, which provides that "no person's property shall be taken, damaged or destroyed for, or applied to, public use without adequate compensation being made, unless by the consent of such person," etc. We would be inclined to adopt the views and reasoning of Judge Comstock, so clearly and ably expressed in the case of *Wynehamer* v. *The People*, 3 Kernan (N. Y.), 378. But opposed to these views there is a strong and almost uniform array of authorities which unequivocally declare that laws such as our local option law are within the scope of the police powers of a State, and do not take, damage or destroy private property for public use within the meaning of that provision of the organic law, and do not infringe upon any other provision of constitutional law.

Upon this subject Mr. Cooley, in his work on Constitutional Limitations, says, after discussing the license cases decided by the supreme court of the United States (5 Howard, 504): "It would seem from the views expressed by the several members of the court in these cases that the State laws known as prohibitory liquor laws, the purpose of which is to prevent altogether the manufacture and sale of intoxicating drinks as a beverage, so far as legislation can accomplish that object, cannot be held void as in conflict with the power of Congress to regulate commerce, and to levy imposts and duties. And in several cases it has been held that the fact that such laws may tend to prevent, or may absolutely preclude, the fulfillment

of contracts previously made, is no objection to their validity. Any change in the police laws, or, indeed, in any other laws, might have a like consequence. The same laws have also been sustained when the question of conflict with State Constitutions, or with general fundamental principles, has been raised. They are looked upon as police regulations, established by the Legislature for the prevention of intemperance, pauperism and crime, and for the abatement of nuisances. It has also been held competent to declare the liquor kept for sale a nuisance, and to provide legal process for its condemnation and destruction, and to seize and condemn the building occupied as a dram-shop on the same ground. And it is only where, in framing such legislation, care has not been taken to observe those principles of protection which surround the persons and dwellings of individuals, securing them against unreasonable searches and seizures, and giving them a right to trial before condemnation, that the courts have felt at liberty to declare that it exceeded the proper province of police regulation. Perhaps there is no instance in which the power of the Legislature to make such regulations as may destroy the value of property, without compensation to the owner, appears in a more striking light than in the case of these statutes. The trade in alcoholic drinks being lawful, and the capital employed in it being fully protected by law, the Legislature then steps in, and, by an enactment based on general reasons of public utility, annihilates the traffic, destroys altogether the employment, and reduces to a nominal value the property on hand. Even the keeping of that, for the purposes of sale, becomes a criminal offense; and, without any change whatever in his own conduct or employment, the merchant of yesterday becomes the criminal of to-day, and the very building in which he lives and conducts the business, which to that moment was lawful, becomes the subject of legal proceedings, if the statute shall so declare, and liable to be proceeded against for a forfeiture. A statute which can do this must be justified upon the highest reasons of public benefit; but whether satisfactory or not, the reasons address themselves exclusively to the legislative wisdom." (Cooley on Const. Lim., pp. 727, 728.) Mr. Mills, in his standard work on Eminent Domain, says: "The manufacture and sale of intoxicating liquor may be declared unlawful and the liquor forfeited. The fact that buildings and machinery devoted to the manufacture of liquor thereby become greatly reduced in value does not call for compensation to the owner." (Mills on Em. Do., § 8.)

The above quoted texts are abundantly and overwhelmingly supported by adjudicated cases in a number of the States of the Union.

It would be an unprofitable consumption of time to review these cases in detail. They are collated in an exhaustive note to the case of *Com.* v. *Kimball*, reported in 35 Am. Decisions, p. 331 *et seq.* (See, also, 12 Am. Law Register, 129.) By the great weight of authority it is established too firmly and emphatically to be now questioned, that a law such as our local option law is constitutional legislation, and, whatever may be the strength of the reasoning against the correctness of these authorities, the matter is *stare decisis;* and we therefore hold the local option law of this State to be a constitutional law, such as the Legislature had full power to enact under section 20, article XVI, of our State Constitution.

II. It is claimed by appellant that the election at which the local option law in Milam county was adopted is void, because of a supposed defect in the petition upon which the commissioners' court acted in ordering said election. The petition is claimed to be defective because it does not state that the petitioners are *qualified voters* of Milam county. Article 3227 of the Revised Statutes declares that it shall be the duty of the commissioners' court, upon the petition of at least fifty qualified voters of the county, to order the election. There is no provision of the statute which prescribes the requisites of such petition. It is clearly contemplated, however, that it shall be in writing and signed by at least fifty qualified voters of the county, or twenty qualified voters of the precinct, town or city, as the case may be, in which it is desired to have the election. No particular allegations or statements are required to be made in it. If it expresses in an intelligible manner the desire of the petitioners to have an election held for the purpose of determining whether or not the local option law shall be adopted within the county, or within a certain justice's precinct, town or city, it is, in our opinion, sufficient.

But, even if it were essential, as contended for counsel for appellant, that it show upon its face that it is presented by the requisite number of qualified voters, the petition in this case substantially and sufficiently shows that fact. It is addressed to the commissioners' court of Milam county, Texas, and states that "The undersigned citizens of said county, believing," etc. The word *citizens* is a sufficient allegation that the signers are qualified voters of the county. A citizen is defined to be "a member of the civil State, entitled to all its privileges." (Cooley's Const. Law, 77.) One of the definitions of the word given by Mr. Webster is, "A person, native or naturalized, who has the privilege of voting for public officers, and who is qualified to fill offices in the gift of the people."

(Webster's Dic., "Citizen.") While the right to vote and hold office are not always necessary constituents of citizenship, still the commonly accepted meaning of the word conveys the idea of a qualified voter. We think the petition in this case is in all respects sufficient, and there is no complaint that the election in other respects was not in strict accordance with the law.

III. The third and last position contended for by counsel for appellant is that the charter of the city of Rockdale, the place where appellant is alleged to have unlawfully sold intoxicating liquor, empowered the corporate authorities of that city to license and regulate the sale of intoxicating liquors within the corporate limits of said city, and that this authority had been exercised by the city, by the passage of ordinances prior to the adoption of said local option law, and by the issuance of licenses under said ordinances permitting appellant and others, for the consideration of certain sums paid to said city, to carry on the business of selling intoxicating liquors for a certain named period of time, which period of time had not yet expired. It is argued that the adoption of the local option law in Milam county does not, and could not, have the effect to repeal or supersede the charter rights of said city, and the ordinances and licenses enacted and granted in pursuance thereof; but that the powers conferred upon said city by its charter, that charter being the general law for the incorporation of cities and towns (see ch. 4, title XVII, R. S.), is a special grant of power, which cannot be taken away or abridged by the local option law, which is a general statute.

In support of this position we are cited to *Davis* v. *The State*, 2 Texas Ct. App., 425, and *Craddock* v. *The State*, 18 Texas Ct. App., 567. Neither of these cases, we think, sustains or is applicable to the proposition here contended for. The local option law was enacted under a mandatory provision of our Constitution. (Const., art. XVI, sec. 20.) While the law in one sense may be said to be a general statute, still in its operation it is confined to localities which may adopt it, and in this sense it is a special statute (*Donaldson* v. *The State*, 15 Texas Ct. App., 25), and must, we think, be given the effect of a special statute, and be held to set aside, and, during its operation, repeal all laws and regulations in conflict with it.

But, even viewing it as a general law, it was unquestionably the intent of the Legislature that it should have the effect, whenever adopted in a particular locality, to prohibit the sale of intoxicating liquors in that locality by any person, without regard to whether such person had been licensed by the State, county, city or town to

sell. Any other construction of the law would seriously impair its efficacy, and in a great measure defeat the purpose for which it was enacted.

In *Rowland & Bro.* v. *The State*, 12 Texas Ct. App., 418, this court held that the Legislature had power by general law to revoke a license for which an antecedent tax had been received by the State. We hold, therefore, that the local option law having been legally adopted in Milam county, it became operative throughout the county, and upon all persons within said county alike, and had the effect to repeal and abrogate all licenses for the sale of intoxicating liquors granted by said county, or by any city or town within said county.

We find no error in the judgment appealed from, and it is affirmed; and it is further ordered that the appellant pay the costs of this appeal, and the amount of costs due herein to the clerk of this court is fixed at $10.

*Affirmed.*

[Opinion delivered November 11, 1885.]